IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Darwin Thomas Sims, ) | C/A No. 0:10-2216-CMC-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Officer Josh Snyder, *Columbia Police Dep't*; ) | **REPORT AND RECOMMENDATION** |
| Columbia City Police Department; Palmetto ) | |
| Richland Hospital; Ms. Pam Caldwell, *ASGDC* ) | |
| *Medical*; and Ms. Nurse Chisolm, *ASGDC* ) | |
| *Medical*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

The plaintiff, Darwin Thomas Sims ("Sims"), filed this matter seeking relief pursuant to 42 U.S.C. § 1983. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the motions for summary judgment filed by Defendant Palmetto Richland Hospital (ECF No. 19), Defendants Columbia City Police Department and Officer Josh Snyder (ECF No. 31), and Defendants Caldwell and Chisolm (ECF Nos. 38 & 42). Defendants Columbia City Police Department and Officer Josh Snyder also filed a motion to dismiss or to impose sanctions, to compel discovery and/or for abstention. (ECF No. 35.) By orders of this court filed pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the dismissal and summary judgment procedures and the possible consequences if he failed to respond adequately. (ECF Nos. 21, 33, 36, & 39.) Sims filed responses in opposition to the defendants' motions. (ECF Nos. 25 & 45.) Having carefully considered the parties' submissions and the applicable law, the court finds that the defendants' motions for summary judgment should be granted.

**BACKGROUND**

Sims's Complaint alleges that on February 15, 2010, he was arrested by "several members" of the Columbia City Police Department relating to crimes allegedly committed on February 12, 2010.  Sims states that during this arrest and after he was handcuffed, he was beaten and kicked by the arresting officers and that one of the officers twisted his left leg until it snapped.  Sims was taken to Palmetto Richland Hospital to receive medical attention where he was diagnosed with a left ankle sprain.  Sims claims that the officers in charge of guarding him at the hospital rushed and intimidated the medical staff, causing them to do an incomplete medical examination and misdiagnose his injury. Sims was then taken to Alvin S. Glenn Detention Center ("the Detention Center"), where he was seen by medical staff and "placed on medical hold" for several days until his leg was x-rayed.  Sims was diagnosed with a fractured fibula.  Sims alleges he was denied medical care for a period of time after being diagnosed with a fibular fracture and that Defendants Nurse Caldwell and Nurse Chisolm ignored medical orders given by Dr. Yates for his care and treatment.  Sims further states that he developed an "unknown infection" on his legs that became worse despite several different types of prescribed antibiotics.  Sims alleges that Defendants Chisolm and Caldwell prevented him from receiving medical treatment.

The following facts from the defendants provide additional relevant background.  Following his initial arrest on February 12, 2010, Sims complained of chest pain and was taken to Palmetto Richland Hospital where he remained under observation for several days.  On February 15, 2010, the day Sims was discharged, Officer Snyder, an officer with the Columbia City Police Department, was assigned to guard Sims at the hospital.  During Sims's discharge, Officer Snyder avers that Sims struck him in the face with his elbow, breaking Snyder's nose, and escaped from the hospital.  In his



response, Sims denies that he assaulted Officer Snyder but admits escaping from the hospital. (ECF NO. 25 at 2.) Sims was apprehended approximately two hours later by Columbia City Police Department officers. Officer Snyder avers that he did not take part in that arrest. Sims was then brought back to the hospital for medical care for his left ankle, as described above. Officer Snyder subsequently sought and obtained a warrant against Sims for Assault and Battery of a High and Aggravated Nature ("ABHAN").

## DISCUSSION

A.     **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.



The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Defendants Columbia City Police Department and Officer Snyder**

Sims's claims against the Columbia City Police Department appear to be that his constitutional rights were violated pursuant to 42 U.S.C. § 1983 and that excessive force was used against him during his February 15, 2010 arrest.

To state a claim for damages under 42 U.S.C. § 1983, an aggrieved party must allege that he or she was injured by "the deprivation of any [of his or her] rights, privileges, or immunities secured by the [United States] Constitution and laws" by a "person" acting "under color of state law." See 42 U.S.C. § 1983; Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690 & n.55 (1978) (noting that for purposes of § 1983 a "person" includes individuals and "bodies politic and corporate"); see generally 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1230 (2002). It is well settled that a defendant in a § 1983 action must qualify as a "person." However, the Columbia City Police Department, a local police department, is an instrumentality of a municipality—not an



independent entity—and thus not a "person" within the meaning of §1983.  Terrell v. City of Harrisburg Police Dep't, 549 F. Supp. 2d 671 (M.D. Pa. 2008) ("It is well-settled that police departments operated by municipalities are not "persons" amenable to suit under § 1983."); Petaway v. City of New Haven Police Dep't, 541 F. Supp. 2d 504, 510 (D. Conn. 2008) ("[A] municipal police department is not subject to suit under section 1983 because it is not an independent legal entity."); Buchanan v. Williams, 434 F. Supp. 2d 521, 529 (M.D. Tenn. 2006) (concluding that "police departments are not 'bodies politic'" and therefore are not persons subject to action under § 1983).

Moreover, even if the City of Columbia were substituted for the Columbia City Police Department in this action, the defendants rightly point out that they are entitled to judgment as a matter of law because Sims has identified no official city policy or custom that is unconstitutional.  See Monell, 436 U.S. at 690-91; (see also Pl.'s Answers to Interrogs. 15 & 16, ECF No. 35-3 at 3.)  Sims's Complaint does not assert that his alleged constitutional deprivation resulted from a city policy or custom.

Additionally, Sims has not alleged nor does the record demonstrate any personal involvement on the part of Defendant Snyder with regard to Sims's allegations of excessive force during his February 15, 2010 arrest.[1]  (Snyder Aff. ¶¶ 7, 15, ECF No. 31-2 at 3, 4-5.)  Therefore, this claim against Defendant Snyder also fails.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  To the extent that Sims's allegations can be construed to raise a claim of false arrest against Defendant

---

[1] In response to summary judgment, Sims states that the excessive force used by the Columbia City Police Department officers was "stimulated by [Officer] Snyder for telling a lie that [Sims] assaulted him."  (ECF No. 25 at 3.)  This statement, without further support, is insufficient to establish personal involvement by Defendant Snyder with regard to any Fourth Amendment claim.

Snyder, no reasonable jury could find that Sims was falsely arrested for ABHAN. See <u>Porterfield v. Lott</u>, 156 F.3d 563, 568 (4th Cir. 1998) (stating that under § 1983, "a public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant").

**C.     Defendants Caldwell and Chisolm**

The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment—deliberate indifference to serious medical needs. <u>Hill v. Nicodemus</u>, 979 F.2d 987, 991 (4th Cir. 1992); <u>Martin v. Gentile</u>, 849 F.2d 863, 871 (4th Cir. 1988) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976)). Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the [Constitution]." <u>Estelle</u>, 429 U.S. at 105. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an detainee and disregards that substantial risk. <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994); see also <u>Parrish v. Cleveland</u>, 372 F.3d 294, 302 (4th Cir. 2004). The government is required to provide medical care for incarcerated individuals. <u>Estelle</u>, 429 U.S. at 102. However, to establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." <u>Miltier v. Beorn</u>, 896 F.2d 848 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See <u>Estelle</u>, 429 U.S. at 106. Further, while the Constitution requires a prison to provide detainees with medical care, it does not demand that a prisoner receive the treatment of his choice. <u>Jackson v. Fair</u>, 846 F.2d 811, 817 (1st Cir. 1988). "[A detainee's] mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." <u>Nelson v. Shuffman</u>, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation

marks and citation omitted); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Sims has failed to provide any evidence that would implicate Defendants Caldwell and Chisolm for deliberate indifference to his medical needs. Sims's Complaint alleges that after his arrival at Alvin S. Glenn Detention Center, he was taken to the evaluation dormitory and placed on "medical hold" for several days until a technician could x-ray his leg, which had become swollen. (ECF No. 1 at 4.) He was diagnosed with a fibular fracture and prescribed a wheelchair, Ibuprofen, and an ACE bandage. (Id.) Sims appears to allege that Nurses Caldwell and Chisolm were deliberately indifferent to his medical needs by ignoring medical orders given by Dr. Yates for Sims's treatment and care. (Id.) Sims also alleges that he subsequently developed a "unknown" skin infection and that Nurses Caldwell and Chisolm denied his requests for medical care. (Id.)

In support of their motion for summary judgment, Defendants Caldwell and Chisolm have provided Sims's medical records, which show that Sims was seen with regard to his leg and his skin condition more than forty-five times from March 1, 2010 when his initial intake was performed through September 10, 2010 when Dr. W.J. Bayard with Imagecare, LLC noted that an x-ray of Sims's left lower leg showed that his fracture had healed. (See generally Medical Records, ECF No. 38-2.) The defendants have also provided affidavits stating that Sims was provided appropriate medical treatment in a timely manner. (See generally Caldwell Aff., ECF No. 42-1; Chisolm Aff., ECF No. 42-2.)



A review of the medical records shows that Sims's initial intake was conducted on March 1, 2010 when he was diagnosed with a cracked fibula. (ECF No. 38-2 at 54.) He was seen for the first time with regard to a skin condition on March 8, 2010 and prescribed medication. (Id. at 35.) As his skin condition persisted, Sims was seen daily through March 17, 2010. (Id. at 25, 27, 34-35, & 48.) During this time, Sims was also seen to evaluate the weight bearing status of his left leg. (Id. at 16.) Following an x-ray, Sims was seen on March 24, 2010 by W.J. Bayard, M.D, a radiologist with ImageCare LLC, who prescribed limited weight bearing on crutches with a splint for three weeks. (Id. at 18, 33.) Sims presented to medical on May 7, 2010, complaining of left leg and ankle pain allegedly due to an officer pushing his leg against his wheelchair. (Id. at 15, 33.) At that time, it was also noted that Sims was to advance to full weight bearing over the next two weeks. (Id. at 33.) On May 10, 2010, Sims was seen in the orthopaedic center at Palmetto Richland Hospital for follow-up x-rays of his left ankle and leg. (Id. at 64-67.) A fibular fracture was noted, and Sims was given ankle stirrups and recommended to wear supportive shoes. (Id.) Sims was seen again for follow-up x-rays on July 12, 2010 and again on September 10, 2010, where it was noted that his fractures had healed. (Id. at 14, 17, 69-70.) In addition, Sims was seen on a regular basis for his persistent skin rash, including but not limited to visits in March, April, May, June, July, August, and September of 2010. (Id. at 13-16, 19-35.)

Sims has not provided any evidence to refute Defendants Caldwell's and Chisolm's proof or directed the court to any specific instances in the medical records supportive of his claims that the defendants failed to provide prompt medical care, much less any evidence that these defendants intentionally interfered with prescribed treatment. See Estelle, 429 U.S. at 104-05 (indicating that deliberate indifference can be manifested by "prison guards in intentionally denying or delaying



access to medical care or intentionally interfering with the treatment once prescribed") (footnote omitted).  Moreover, even taking Sims's remaining allegations against these defendants as true, they fail to state a claim for deliberate indifference.  See, e.g., Ramirez v. Beatty, 19 F.3d 22, 1994 WL 75897, at *2 (7th Cir. 1994) (Table) (concluding that summary judgment was appropriate where the record provided "no evidence to support an inference that the defendants' alleged failure to administer the prescribed medical treatment rose to a level of deliberate indifference" and stating that "complaints [that] may not have been handled as efficiently as possible does not indicate an intentional or deliberate attempt to ignore [an inmate's] needs"); McKnight v. James, No. 1:08CV406, 2009 WL 806584, at *6 (M.D.N.C. Mar. 27, 2009) (stating that even allegations that defendants "somehow failed to maintain a particular schedule of visits, the failure to render treatment consistent with a doctor's orders is not sufficient to state a claim for deliberate indifference").  At most, Sims's claims allege negligence or medical malpractice, which is not actionable under § 1983.  See Daniels v. Williams, 474 U.S. 327, 328-36 & n.3 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir.1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct."); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

To the extent that Sims is seeking to raise state law claims of negligence or medical malpractice, South Carolina law requires a plaintiff to file an affidavit of an expert witness with his complaint when asserting a claim of professional negligence against a professional licensed or registered with the State of South Carolina.  S.C. Code Ann. § 15-36-100(B); Martasin v. Hilton Head Health Sys. L.P., 613 S.E.2d 795, 799 (S.C. Ct. App. 2005); Jernigan v. King, 440 S.E.2d 379,

381 (S.C. Ct. App. 1993). This requirement specifically includes nurses. See S.C. Code Ann. § 15-36-100(G). It is undisputed that Sims has failed to file an expert affidavit with his Complaint, and therefore he cannot proceed with a state law claim of negligence or medical malpractice against Defendants Caldwell and Chisolm.

**D.     Defendant Palmetto Richland Hospital**

To the extent that Sims alleges that Defendant Palmetto Richland Hospital violated his civil rights pursuant to 42 U.S.C. § 1983, his claims must fail. Sims has provided no evidence that Palmetto Richland Hospital is a "state actor," *i.e.* an employee or a contract medical provider of the Alvin S. Glenn Detention Center. Cf. West v. Atkins, 487 U.S. 42, 48 (1988) (holding that private physicians that contracted with the state to provide medical care to prisoners were state actors because they were hired to fulfill an obligation—providing medical care—which was traditionally fulfilled by the state); Mavins v. McFadden, C/A No. 2:09-483-HFF-RSC, 2009 WL 4906573, *5 (D.S.C. Dec. 18, 2008) (unpublished) (rejecting the argument that actions by employees of Correct Care were not taken "under color of state law" as required by § 1983); Robinson v. Green, C/A No. 2:06-cv-985-RBH, 2007 WL 1447871 (D.S.C. May 11, 2007) (unpublished) (rejecting the argument that the medical defendants were not state actors because they were employed by Prison Health Services, an independent health contractor with a detention center). Accordingly, no reasonable jury could find that Palmetto Richland Hospital acted in any way under color of state law. Additionally, any state law claim for negligence or medical malpractice must also fail. See S.C. Code Ann. § 15-36-100(B). Accordingly, Palmetto Richland Hospital is entitled to summary judgment.

E.   **State Law Claims**

To the extent that Sims's Complaint could be construed to state any other claims arising under state law, the court should decline to exercise supplemental jurisdiction over those claims. See 28 U.S.C. § 1367(c).

### RECOMMENDATION

Accordingly, the court recommends that the defendants' motions for summary judgment be granted. (ECF No. 19, 31, & 38.) In light of this recommendation, Defendant Columbia City Police Department and Defendant Snyder's pending motion to dismiss (ECF No. 35) for failure to cooperate with discovery should be terminated from the docket as moot.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

August 12, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

>Larry W. Propes, Clerk
>United States District Court
>901 Richland Street
>Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).